J. TONY SERRA #32639
SHARI L. WHITE #180438
506 Broadway
San Francisco CA 94133
Telephone: 415/986-5591

Attorneys for Defendant
ETHAN STUART

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 12-0076 WBS |
| Plaintiff, | DEFENDANT ETHAN STUART'S NOTICE OF MOTION AND MOTION TO DISMISS INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES BASED ON DOCTRINES OF ESTOPPEL |
| v. | |
| ETHAN STUART, | |
| Defendant. | Date:  October 22, 2012<br>Time:  9:30 a.m.<br>Judge: Shubb |

TO THE ABOVE-ENTITLED COURT AND TO THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that on the date and at the time indicated above, or as soon thereafter as the matter may be heard, Ethan Stuart, through counsel, will move this Court for an order dismissing the Indictment on the grounds that it is barred by the Doctrine of Estoppel by Official Misleading, also called Estoppel by Entrapment, by the Doctrine of Judicial Estoppel, and Promissory Estoppel.

This motion is based upon the due process requirements of the United States Constitution, and is supported by the following memorandum of points and authorities, further matters as may hereafter arise, and such other evidence as the Court may receive at the hearing on this motion.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  INTRODUCTION

3  Mr. Stuart respectfully submits this brief in support of
4  his motion to dismiss the Indictment against him because the
5  prosecution is barred by the Doctrine of Estoppel by Official
6  Misleading, also called Estoppel by Entrapment and the Doctrine
7  of Judicial Estoppel.

8  The federal government, via United States Attorney General
9  Eric Holder, made unequivocal assertions regarding the decision
10 not to target and prosecute individuals who were in compliance
11 with state law for a violation of the Controlled Substances Act
12 (CSA), unless the individual violated both the CSA and a state
13 medical marijuana law.  Moreover, local officials examined and
14 affirmed that Mr. Stuart was indeed in compliance with Calif-
15 ornia medical marijuana law.  Ethan Stuart complied with all
16 requirements set forth by the state government and reasonably
17 relied on the representations set forth by the Attorney General
18 of the United States, as well as local officials that if he were
19 "state legal", the federal government would not charge him.
20 Defendant has incurred a substantial monetary loss, has been
21 charged with federal felonies and faces a considerable prison
22 sentence, all because he had relied to his detriment on the
23 representations made by the federal executive branch.

24 For the reasons set forth herein, defendant urges this
25 Court to dismiss the present Indictment or, in the alternative,
26 defendant must be allowed to present this defense to the jury at
27 a trial of his case.

28

FACTUAL BACKGROUND

1

2    Ethan Stuart has been indicted under the Controlled

3 Substances Act, 21 U.S.C. § 801, *et seq.* (hereafter "CSA"),

4 charged with a conspiracy to manufacture at least 100 marijuana

5 plants and possess with the intent to distribute at least 100

6 kilograms of marijuana in violation of 21 U.S.C. § 846 and §

7 841(a); possession with the intent to distribute at least 100

8 marijuana plants (approximately 20 pounds) in violation of 21

9 U.S.C. § 841(a)(1); manufacture of at least 100 marijuana plants

10 in violation of 21 U.S.C. § 841(a)(1); and forfeiture allega-

11 tions under 21 U.S.C. § 853(a).

12    These charges arise from the defendant's lawful activities

13 under California law, which legalized the medical use of

14 marijuana, as is its sovereign right in our federalist system,

15 and established an administrative framework to ensure that

16 seriously ill citizens can have access to its therapeutic

17 benefits.

18    California's Compassionate Use Act, Proposition 215, S.B.

19 420, Section 1(e) (Sept. 11, 2003) and Cal. Health & Safety Code

20 § 11362.5(b)(1)(A)) provide and ensure pursuant to the powers

21 reserved to the State of California and its people under the

22 Tenth Amendment to the United States Constitution that seriously

23 ill Californians have the right to obtain and use marijuana for

24 medical purposes.

25    This prosecution targets Ethan Stuart's medical marijuana

26 cultivation in Nevada City, California, County of Nevada.  Ethan

27 Stuart's medical cultivation transpired as a result of the

28 seminal development in California medical cannabis law. These

1  developments led inevitably to the need for some system by which

2  deserving and qualified patients could be supplied with

3  marijuana for the uses legitimized by State law.

4       Public officials, notably for our purposes the local

5  Sheriff's Department, and State Officials, were actively engaged

6  in attempting to establish a viable system for the medical

7  marijuana cultivations.  Prior to the instant prosecution,

8  local officials examined Ethan Stuart's property and his medical

9  marijuana cultivation and found that it was legal and in

10 compliance with California state law, limited to his and others'

11 personal use and supported by medical marijuana recommendations.

12      The officials' statements and stamp of approval also

13 confirmed the defendant's previously-held beliefs that

14 compliance with Nevada County's rules and regulations would be a

15 bar to federal prosecution.

16      Here, Ethan Stuart relied on federal executives, namely

17 Attorney General Eric H. Holder Jr. and the Obama Administra-

18 tion's consistent promises against the targeting and prosecution

19 of those individuals otherwise in compliance with state law.

20      Ethan Stuart continued to operate in compliance with

21 California requirements until his arrest by federal agents in

22 2012 in reasonable reliance on local and federal authorities.

23 At all times, he believed in good faith, based on the assurances

24 of local officials, and his reliance on the federal executives

25 representations, that he was operating within the law and that

26 he would not be prosecuted by the federal government.

27

28

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

**ARGUMENT**

I.

THE GOVERNMENT'S INDICTMENT OF ETHAN STUART IS BARRED BY THE DOCTRINE OF ESTOPPEL BY OFFICIAL MISLEADING, OR ESTOPPEL BY ENTRAPMENT.

The federal government is estopped from prosecuting Ethan Stuart, as a matter of both fact and law, under the defense of entrapment by estoppel, also known as estoppel by official misleading.  If the indictment is not dismissed as a matter of law, defendant must be allowed to present this defense to the jury at a trial of his case.

**A.   The Defense of Entrapment by Estoppel**

"Entrapment by estoppel is the unintentional entrapment by an official who mistakenly misleads a person into a violation of the law." United States v. Schafer, 625 F.3d 629, 637 (9th Cir. 2010)(quoting United States v. Batterjee, 361 F.3d 1210, 1216 (9th Cir. 2004)).

The defense rests on a due process theory which focuses on the conduct of the government officials, upon which a defendant has reasonably relied, and not the defendant's state of mind, *i.e.*, whether he is "predisposed" to commit some federal crime. Batterjee, 361 F.3d at 1218 (quoting United States v. Brebner, 951 F.2d 1017, 1025 (9th Cir. 1991)). As such, the name of the defense is somewhat of a misnomer. It is not entrapment in the usual sense. For example, the defendant's predisposition to commit a crime is never at issue. *Id.*

This defense is firmly rooted in the concept of fundamental fairness and due process, the government cannot authorize a

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1  person to engage in prohibited conduct and then proceed to

2  prosecute him.

3      In general, defenses premised upon the government imper-

4  missibly entrapping a defendant are and have been recognized for

5  decades. *See* Ninth Circuit Model Jury Instruction 6.2 and

6  comments thereto. Any defense based upon entrapment has two

7  elements: (1) government inducement of the crime; and, (2) a

8  lack of predisposition on the part of the defendant to engage in

9  the criminal conduct. *Id.*; <u>Mathews v. U.S.</u>, 485 U.S. 58, 63

10 (1988); <u>U.S. v. Khalil</u>, 279 F.3d 358, 364 (6th Cir. 2002).

11     While entrapment is usually a question of fact, <u>Masciale v.</u>

12 <u>U.S.</u>, 356 U.S. 386 (1958), a defendant can succeed on a pretrial

13 motion when the evidence on the question is substantially

14 undisputed. <u>Sherman v. U.S.</u>, 356 U.S. 369, 373 (1958). Failing

15 that, a defendant is entitled to a jury instruction requiring

16 the prosecution to prove, beyond a reasonable doubt, that the

17 defendant was not entrapped if the defendant has offered some

18 evidence which would support each of the two foregoing elements.

19 <u>Matthews</u>, *supra*.

20     It is important to note that, whether federal courts refer

21 to this defense as "Estoppel by Official Misleading Statement"

22 or "Entrapment by Estoppel", the courts have described a varying

23 range of misleading statements that can serve as inappropriate

24 inducement to a defendant.  For instance, courts have referred

25 to a government representation which induced the defendant to

26 perform an unlawful act as a statement:

27     1.   which "misleads a party as to the state of the law."
          <u>U.S. v. Hardridge</u>, 379 F.3d 1188, 1192 (10th Cir.
28        2004);

2.   that the "law did not apply" to the defendant. U.S. v. Pennsylvania Indus. Chem. Corp., 411 U.S. 655 (1973);

3.   that the defendant's conduct was "legal." U.S. v. Hsieh Hui Mei Chen, 754 F.2d 817 (9th Cir.), *cert. denied*, 471 U.S. 1139 (1985);

4.   that the defendant's conduct was "permissible." Batterjee, 361 F.3d at 1216;

5.   which "mistakenly misleads a person into a violation of the law." Ramirez-Valencia, 202 F.3d 1106, 1109 (9th Cir. Cal. 2000);

6.   that the defendant's conduct is "sanctioned by the government." U.S. v. Burrows, 36 F.3d 875, 882 (9th Cir. 1994); and

7.   that the defendant would not be prosecuted if he performed an act in a certain county; U.S. v. Rosenthal, 266 F.Supp.2d 1068, 1082 (N.D.Cal. 2003).

Ultimately, the specific text of the representation is a question of semantics.  It is no more inherently fair to allow a government to prosecute a person for engaging in conduct which that government's agent has said won't be subject to prosecution than it is to allow the prosecution when the agent has said the conduct is legal. *See* e.g. U.S. v. Lansing, 424 F.2d 225, 226 (9th Cir. 1970) in which the Court opined:

> We may assume *arguendo* with appellant that there exists a narrowly limited class of cases where misleading governmental activity constitutes a good defense to a criminal charge. Whether this rule rests on entrapment, Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); quasi-entrapment, Raley v. Ohio, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959); State v. Ragland, 4 Conn.Cir. 424, 233 A.2d 698 (1967), *mens rea*, Schiff v. People, 111 Colo. 333, 141 P.2d 892 (1943); People v. Ferguson, 134 Cal.App. 41, 24 P.2d 965 (1933), or on more general principles of due process and estoppel, Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); People v. Markowitz, 18 N.Y.2d 953, 277 N.Y.S.2d 149, 223 N.E.2d 572 (1966); People v. Donovan, 53 Misc.2d 687, 279 N.Y.S.2d 404 (Westchester Ct.Spec.Sess.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1   1967), we have no occasion to determine. *See*
2   generally Note, Applying Estoppel Principles
    in Criminal Cases, 78 Yale L.J. 1046 (1969);
3   Case Note, 81 Harv.L.Rev. 895 (1968).

4   Accordingly, in <u>U.S. v. Thompson</u>, 25 F.3d 1558 (11th Cir.

5   1994), the Court reversed a conviction after the trial court

6   refused to allow the defendant to introduce evidence related to

7   his offered defense of Estoppel by Entrapment. The court held

8   that, while the defendant's proffer that a government agent had

9   told him he could possess a firearm without fear of being

10  prosecuted was questionable at best, the jury should have been

11  permitted to hear the testimony and weigh the evidence. <u>Id</u>. at

12  1565.

13  As mentioned, above, the Ninth Circuit Model Criminal Jury

14  Instruction on Entrapment, Instruction 6.2, provides, in

15  pertinent part:

16          The government has the burden of proving
            beyond a reasonable doubt that the defendant
17          was not entrapped. The government must prove
            ...
18
            2.   **the defendant was not induced by the**
19          **government** agent to commit the crime.
                            ***
20          **In determining whether the defendant was**
            **predisposed** to commit the crime before being
21          approached by a government agent, you may
            consider the following:
22                          ***
            5.   **the nature of the government's inducement or**
23               **persuasion.**

24          In **determining whether the defendant was**
            **induced** by a government agent to commit the
25          offense, **you may consider any government**
            **conduct** creating a substantial risk that an
26          otherwise innocent person would commit an
            offense, including ... fraudulent
27          representations ...[emphasis added].

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331
28

8

1    Accordingly, the instruction, itself, makes it clear that
2 any statement made by federal government officials, the nature
3 of which induced or persuaded an individual to engage in
4 unlawful conduct, may suffice to establish entrapment by that
5 misleading statement. If the sufficiency of the statement is in
6 dispute, it is for the jury to determine whether the prosecution
7 has proven beyond a reasonable doubt that the statement was
8 insufficient to induce or persuade the defendant.

9    The defense itself derives from two Supreme Court cases
10 which overturned the convictions of individuals who acted
11 consistent with information provided from state officials.

12    The first case, <u>Raley v. Ohio</u>, 360 U.S. 423 (1959),
13 involved the appeal of four individuals convicted for refusing
14 to answer questions of a state legislative commission.  There,
15 the legislators had instructed the defendants that they could
16 refuse to answer questions based on the state privilege against
17 self-incrimination.  Not surprisingly, the defendants refused to
18 answer any questions.

19    The problem with the legislators' admonishment was that it
20 was wrong; it was actually unlawful not to answer the commis-
21 sion's questions because of a statute that provided immunity to
22 all such witnesses. The Supreme Court overturned the convic-
23 tions. The Court reasoned that to allow such prosecutions, would
24 be to sanction an indefensible sort of entrapment by the State,
25 convicting a citizen for exercising a privilege which the State
26 had clearly told him was available to him.  <i>Id.</i> at 426 (emphasis
27 added).

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331
28

1    The second case was <u>Cox v. Louisiana</u>, 379 U.S. 559 (1965),

2  where a group of protesters had been convicted for demonstrating

3  across the street from the local courthouse under a statute

4  prohibiting such conduct "near" a courthouse.  Once again, the

5  convictions contradicted previous government statements

6  concerning the legitimacy of the defendant's actions.  In this

7  case, prior to demonstrating at that location, the group had

8  been instructed by the police chief they could lawfully protest

9  there.  Once again, the Supreme Court precluded prosecution:

10           [T]he highest police officials of the city,
             in the presence of the Sheriff and Mayor, in
11           effect told the demonstrators that they
             could meet where they did ….  The situation
12           presented here is analogous to that in
             <u>Raley</u>, which we deem to be controlling ….
13
             The Due Process Clause does not permit
14           convictions to be obtained under such
             circumstances.  *Id.* at 571 (emphasis added).
15
       **B.    The Defense Is Fully Recognized and
16           Applicable in the Ninth Circuit**

17    The Ninth Circuit has long recognized this defense.

18  "Entrapment by estoppel applies when an official tells the

19  defendant that certain conduct is legal and the defendant

20  believes the official."  <u>United States v. Hsieh Hui Chen</u>, 754

21  F.2d 817, 825 (9th Cir. 1985), citing <u>Cox</u>, 379 U.S. 559.  The

22  Ninth Circuit has reversed convictions in a number of cases.

23    For example, in <u>United States v. Tallmadge</u>, 829 F.2d 767

24  (9th Cir. 1987), the court reversed the defendant's convictions

25  for possession of firearms by a convicted felon.  There,

26  <u>Tallmadge</u> had accurately informed a federally licensed firearms

27  dealer that he had previously been convicted of a felony, but

28  that it had since been reduced to a misdemeanor.  The firearms

1  dealer incorrectly believed that such a reduction allowed

2  Tallmadge to purchase firearms, informed Tallmadge that federal

3  law did not prohibit him from possessing firearms, and sold

4  Tallmadge the firearms listed in the indictment.

5     On appeal, the Ninth Circuit determined that Tallmadge had

6  asserted a proper entrapment by estoppel defense and reversed

7  his convictions.  In doing so, the court held that "the

8  misleading statement regarding the lawfulness of Tallmadge's

9  proposed conduct was made by a licensee of the federal

10 government." *Id.* at 774. "Under these circumstances, we believe

11 that a buyer has the right to rely on the representations of a

12 licensed firearms dealer, who has been made aware of all the

13 relevant historical facts." *Id.*

14    The court also found Tallmadge's belief that he could

15 lawfully possess these firearms was reasonable.  This finding of

16 reasonableness was supported by the fact Tallmadge had been

17 given legal advice that he could possess the firearms, and this

18 advice was consistent with the comments of the trial judge and

19 the deputy district attorney at his state court proceedings.

20 *Id.* at 775.

21    Similarly, in United States v. Clegg, 846 F.2d 1221 (9th

22 Cir. 1988), the Ninth Circuit affirmed the district court's

23 pretrial determination to allow a defendant to assert a

24 "reliance on government officials" defense concerning charges he

25 unlawfully exported firearms to Afghan rebels resisting the

26 Soviet occupation in the early 1980's.  There, Clegg wanted to

27 present evidence that United States officials from various

28 governmental agencies had solicited, encouraged, and assisted

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1 his efforts to supply these weapons. *Id.* at 1222.

2    *Clegg*'s factual defense was that he had relied on the
3 statements of two officers with the United States Army, as well
4 as other "individual government officials, whose positions led
5 Clegg to believe that they had power to authorize arms shipments
6 to the rebels." *Id.* at 1222-23.   Applying Tallmadge, the court
7 reasoned that "[i]f Tallmadge was entitled to rely upon the
8 representations of the gun dealer as a complete defense, we can
9 hardly deny the same defense to Clegg." *Id.* at 1224.   The
10 court's holding was based on the fact that Clegg had "dealt not
11 merely with government officials, but officials of the highest
12 rank." *Id.*   The court also determined that Clegg's beliefs as to
13 the lawfulness of his conduct were reasonable, as he was
14 operating "in a place not obviously covered by American law."
15 *Id.*

16    More recently, the Ninth Circuit applied the entrapment by
17 estoppel defense in reversing a conviction in United States v.
18 Batterjee, 361 F.3d 1210 (9th Cir. 2004).   There, a Saudi-
19 national admitted into the United States on a non-immigrant
20 student visa had been convicted of unlawful possession of a
21 firearm he had purchased from a federally licensed firearms
22 dealer.   Unbeknownst to either of them, federal law had been
23 amended in 1998 to prohibit those admitted on non-immigrant
24 visas from possessing firearms.

25    When Batterjee purchased his handgun in 2001, the Bureau of
26 Alcohol, Tobacco and Firearms (ATF) had yet to update its
27 application form (Form 4473) with this prohibition, and the
28 firearms dealer was unaware of it.   Batterjee had correctly

answered all the questions on the Form 4473, including the fact that he was not a United States citizen.  Nonetheless, the firearms dealer incorrectly informed Batterjee he could purchase the handgun so long as he provided a government identification card and evidence of 90 days residency—both of which he did. The Ninth Circuit reversed Batterjee's conviction, holding that Batterjee had established his reasonable reliance on affirmative statements by an authorized government official, that the proscribed conduct was permissible. *Id.* at 1216.  The court overturned Batterjee's conviction because it found the firearms dealer had affirmatively told Batterjee he could lawfully purchase the handgun, and that Batterjee's reliance on the firearms dealer's statements and the government Form 4473 was reasonable.

        1.    <u>The Assurances from Local Officials Compel</u>
              <u>Dismissal of the Indictment</u>.

Pretrial dismissal is appropriate where there are no disputed issues of fact relating to the entrapment by estoppel defense.  <u>United States v. Schafer</u>, 625 F.3d 629, 635-36 (9th Cir. 2010). "When such conflicts arise, the issue of whether the defendant was entrapped is a credibility question for the jury." *Id.* at 637 (internal quotations omitted).  An entrapment by estoppel defense is available at trial so long as the defendant can "demonstrate a reasonable belief that his conduct was sanctioned by the government." *Id.* (quoting <u>United States v. Burrows</u>, 36 F.3d 875, 882 (9th Cir. 1994)).  Here, each element of the entrapment by estoppel defense is satisfied.

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

It is undisputed that prior to the pending federal charges, local officials visited Ethan Stuart's property, counted his plants and examined his medical marijuana cultivation.  These local officials assured Mr. Stuart that the cultivation was legal and in compliance with California state law, as it was limited to personal use and supported by medical marijuana recommendations.

As such, the defendant should not be required to establish whether the officials were acting as "*de facto* federal officials or authorized agents of the federal government." <u>Schafer</u>, 625 F.3d at 638.  If the government disputes this fact, defendants are entitled to submit this issue to the jury because there can be no doubt the assurances by the local officials alone demonstrate a "reasonable belief" that defendants' conduct was "sanctioned by the government."

The fact that the officers and officials were apparently authorized to give such assurance is of the utmost importance. As in the case of State Court judicial officers, a sheriff is obligated, by his oath of office, to uphold and apply federal law as well as California State law.  Entrapment by estoppel exists when the erroneous advice upon which a defendant reason-ably relied came from a State Court judge rather than an official on the federal payroll.  <u>United States v. Brady</u>, 710 F. Supp. 290, 296 (D. Col. 1989)(State Court judge erroneously told defendant, an ex-felon, that he could utilize a gun for hunting and trapping without violating federal law; defendant acquitted in court trial)(negative treatment for unrelated reasons).

1   Although not officials of the federal judiciary or govern-

2 ment, State Court judicial officers are "constitutionally

3 obligated to apply federal law."  As Brady holds, if, in the

4 course of discharging this obligation, they specifically mis-

5 inform a defendant regarding federal law, the defendant can rely

6 on those assurances in a future federal prosecution. *Id.* at 637

7 (emphasis added).

8   While not California judges, the local officials and

9 officers, that examined and approved of Mr. Stuart's

10 cultivation, occupied unique and powerful positions in the

11 justice system that qualified them to expound on the reach of

12 federal law enforcement in this area (drug manufacturing and

13 sale).  Such officials swore an oath to uphold and apply the

14 Constitution and law of the United States.  To reject the

15 defense of entrapment by estoppel because of the status as a

16 State rather then federal official is to ignore the due process

17 root of this defense.

18   Indeed, properly understood, this defense focuses not on

19 the specific job title of the official but rather on whether the

20 position of that official within the State-federal law enforce-

21 ment apparatus is such that the advice and assurances may be

22 reasonably relied upon by those to whom they are made.  As the

23 District Court in the Brady case put the matter, "[t]he better

24 view is that the defense is not based on the government being

25 bound by the conduct of its agents, but rather, on the funda-

26 mental unfairness of punishing a defendant for conforming his

27 conduct to an erroneous interpretation of the law by a judge

28 having the power to confine him."  Brady, *supra*, 710 F.Supp. at

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1   296.

2      The United States has clearly given federal and State law

3   enforcement and judicial officers a joint role in enforcing laws

4   of the United States proscribing the possession and distribution

5   of controlled substances.

6      Knowing this, a person in Mr. Stuart's position was

7   entitled to rely on the confident, unequivocal assertions of the

8   examining officials.

9      It is also undisputed that the Sheriff's Department counted

10  the number of plants present in Mr. Stuart's cultivation and

11  that Mr. Stuart took proper actions to ensure that his medical

12  cultivation was always in full compliance with the local

13  guidelines.  Accordingly, the undisputed facts establish the

14  condition precedent for Mr. Stuart's assurance federal

15  prosecution would not ensue.

16     Significantly, these assurances came not only from the

17  approval of local examinations, but also directly from the

18  federal government, in the adoption of that precise policy

19  throughout the country. (United States Department of Justice,

20  Attorney General Announces Formal Medical Marijuana Guidelines,

21  Oct. 19, 2009, as set forth in the Ogden Memorandum, See Exhibit

22  A) ("The guidelines make clear that the focus of federal

23  resources should not be on individuals whose actions are in

24  compliance with existing state laws …."). See Exhibit A.

25     Furthermore, such reliance was reasonable.  No citizen

26  would doubt the validity of such assurances coming from local,

27  State and the federal government.  As discussed below, the

28  federal government's statements, policies and memorandums alone

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1   establish *prima facie* evidence of reasonableness by defendant.

2          2.   <u>Assurances Directly from the Federal Government</u>
            <u>Compel Dismissal of the Indictment because Mr.</u>
3          <u>Stuart was Entrapped By the Attorney General's</u>
            <u>and Federal Government's Misleading Statements.</u>
4

5        Attorney General Eric H. Holder Jr. and other represen-

6   tatives of the federal government have taken a position and made

7   assurances entirely opposed to the present prosecution.

8        Shortly after taking office in February 2009, Attorney

9   General Holder repeatedly made public commitments to the

10  American public and Congress that the United States would not

11  and will not be prosecuting an individual for a violation of the

12  Controlled Substances Act (CSA) unless the individual violates

13  both the CSA and a state medical marijuana law.  He made that

14  representation on February 25, 2009 and reiterated it

15  consistently thereafter.  See Exhibit B.

16       The Attorney General qualified his commitment on October

17  19, 2009, when referring to a memorandum released that day (the

18  <u>Ogden</u> Memo).  See Exhibit A.   He indicated that even those

19  complying with state medical marijuana law might be prosecuted

20  if they engaged in any of seven kinds of conduct.  On October

21  19, 2009, the <u>Ogden</u> Memo, authored by Deputy Attorney General

22  David Ogden, contained guidelines and was sent to various States

23  Attorneys, including those in California and Montana.  See

24  Exhibit A.

25       Deputy Ogden wrote that federal prosecutors should

26  generally refrain from prosecuting an individual for a violation

27  of the CSA unless the individual was also violating a state

28  medical marijuana law.  However, the Ogden Memo differed

critically in two ways from what the Attorney General had been saying.  First, the Ogden Memo identified seven instances in which federal prosecutors were encouraged to ignore this non-prosecution policy.

Those arose when an individual:

1. unlawfully possessed or used a firearm;

2. committed an act of violence;

3. sold marijuana to minors;

4. engaged in financial and marketing activities inconsistent with the terms, conditions, or purposes of state law, including evidence of money laundering activity and/or financial gains or excessive amounts of cash inconsistent with purported compliance with state or local law;

5. dispensed amounts of marijuana inconsistent with purported compliance with state law;

6. possessed or sold other controlled substances; or

7. dispensed marijuana in association with another criminal enterprise.

Second, unlike what the Attorney General had been saying publicly, Deputy Ogden expressly wrote that the guidelines incorporated in the memorandum did not "legalize marijuana or provide a defense to a violation of federal law."  The Department of Justice again qualified its commitment by supporting the memorandum released June 29, 2011 (the Cole Memo) indicating that the United States would also not refrain from prosecuting those complying with state medical marijuana laws if they were engaged in large scale enterprises.  See Exhibit C.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1    The media frequently reported on the Attorney General's
2  public commitments.  Copies of those reports are preserved on
3  the INTERNET.  Almost universally, the media reported that the
4  Attorney General was publicly promising that the United States
5  and the Obama Administration would refrain from prosecuting
6  individuals in compliance with State law.

7    In addition, on October 30, 2009, Assistant United States
8  Attorney (AUSA) Mark Quinlivan, Attorney General Holder's lawyer
9  in the matter of County of Santa Cruz, California, et al. v.
10 Ashcroft,[Holder] et al., Case No. C03 -1802-JF, represented to
11 the Honorable Jeremy Fogel, United States District Court Judge
12 for the Northern District of California, that the DOJ would be
13 bound by guidelines delineated in the Ogden Memo.

14   AUSA Quinlivan had represented that there was a need to
15 delay those proceedings until the DOJ had finished drafting the
16 written guidelines.  AUSA Quinlivan had sent the court a copy of
17 the guidelines on the day they were issued.

18   The guidelines were issued to support Attorney General
19 Holder's argument that the County of Santa Cruz, et al v.
20 Holder, et al. be dismissed.  The complaint requested that the
21 court order the Attorney General to refrain from prosecuting
22 individuals for a violation of the CSA who were in compliance
23 with state law, because the Attorney General's failure to
24 establish guidelines binding on federal prosecutors made it
25 impossible for a citizen to know whether she or he would be
26 federally prosecuted.  The County of Santa Cruz, the WO/Men's
27 Alliance for Medical Marijuana (WAMM) – an organization that
28 provided health care to approximately 500 patients and generates

$1.7 million in annual revenues – and dozens of WAMM's patients had sued former United States Attorney General Ashcroft, et al. Pursuant to adopted ordinances, the County of Santa Cruz had overseen the WAMM clinic.

The complaint also sought unspecified monetary damages stemming from gunpoint raids.

In spite of the blanket disclaimers incorporated into the Ogden Memo, the next day AUSA Quinlivan argued to Judge Fogel that the Plaintiffs could no longer complain that DOJ's policy was so vague as to make it impossible for someone to "know what was – what activities would be targeted under federal law and what activities could go forward."  Transcript of Proceedings Before the Honorable Jeremy Fogel United States District Judge held on October 30, 2009 (herein "Transcript", See Exhibit D), p. 4, ln. 4-6, County of Santa Cruz, California, et al. v. Ashcroft, et al., Case No. C03-1802-JF, Document 226, filed 3/10/10.

Because the Attorney General had issued these written guidelines, AUSA Quinlivan adamantly asserted that "what happened in the past" no longer had any bearing whatsoever in terms of the case because the Plaintiffs would be seeking an injunction to enjoin a 'policy that is in the past.'"  Tran-script, p. 4, ln. 14-19. See Exhibit D.  He insisted that the parties "are in a completely different posture now given that guidance [has been] issued by the Attorney General."  Transcript, p. 4, ln. 8-9.   See Exhibit D.

AUSA Quinlivan stressed that, typically, this kind of guidance is strictly internal, but the guidelines had been

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1  publicly released and were available on the Department's

2  website.   In response, Judge Fogel summarized AUSA Quinlivan's

3  position by saying:

4          ... what you are talking about is an
           abatement and it would not be unabated
5          unless and until the government didn't
           follow its policy ...
6
   Transcript, p. 8, ln. 15-18.  See Exhibit D.
7
   AUSA Quinlivan concurred.  After AUSA Quinlivan took this
8
   position, on January 21, 2010, the parties electronically filed
9
   a binding stipulation which, in pertinent part, read:
10
11         1.   On October 19, 2009, the United States Department of
                Justice issued a Memorandum from Deputy Attorney
12              General David Ogden to selected United States
                Attorneys regarding Investigations and Prosecutions in
                States Authorizing the Medical Use of Marijuana
13              (hereinafter "Medical Marijuana Guidance").  This
                Medical Marijuana Guidance is incorporated herein and
14              attached as Exhibit 1.  As a result of the issuance of
                the Medical Marijuana Guidance, Plaintiffs agree to
15              dismiss this case without prejudice.

16         2.   The parties further stipulate and agree that if
                Defendants withdraw, modify, or cease to follow the
17              Medical Marijuana Guidance, this case may be reinsti-
                tuted in its present posture on any Plaintiffs' motion
18              ...

19     At the bottom of the stipulation, the parties had

20  incorporated the text:

21                    SO ORDERED

22                    _____
                      JEREMY FOGEL
23                    UNITED STATES DISTRICT COURT JUDGE

24     On January 25, 2010, Judge Fogel signed the ORDER

25  incorporated in the STIPULATION.

26     Again, both local and national media reported on the

27  developments in the County of Santa Cruz case.  While the

28  reports were tempered with comments that the stipulation into

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

which Attorney General Holder had entered did not permanently
bind him to that position, the media reported that Attorney
General Holder had agreed that the DOJ would be bound by the
guidelines in the <u>Ogden</u> Memo, at least until such time DOJ
elected to amend them.

After January 2010, the number of medical marijuana
patients, providers and prescribers sky-rocketed nationally.
Like hundreds of thousands of other citizens, Ethan Stuart
believed the federal government would not prosecute him if he
engaged in activity which complied with a state medical
marijuana law.  Mr. Stuart's medical marijuana cultivation was
legal and in compliance with California state law, limited to
personal use and supported by medical marijuana recommendations.
Moreover, the cultivation was visited by local officials who
examined the grow and confirmed its full compliance with
California law.

Consistent with the <u>Ogden</u> Memo, at no time did Mr. Stuart
include or contemplate that any participant would engage in acts
of violence, sales to minors, marketing activities in violation
of the MMMA, possess or sell other controlled substances, reap
financial gains which exceeded those allowed by the MMMA, or
otherwise engage in any criminal enterprise.

In raising the defense of Entrapment/Official Misleading
Statement, a defendant need not allege or prove that the
official making the statements engaged in intentional fraud or
trickery.  <u>Tallmadge</u>, 829 F.2d at 775.  In fact, it is Mr.
Stuart's belief that Attorney General Holder specifically
intended to convey that the federal government is wholly

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1  committed to a policy of refraining from prosecuting violations

2  of the CSA unless the individual is either also violating a

3  state medical marijuana law or the individual is engaging in one

4  of the seven enumerated categories of other conduct when

5  violating the CSA.  There was no misinterpretation of words.

6  Undeniably, however, the Attorney General's statements misled

7  Mr. Stuart and hundreds of other individuals complying with

8  state law requirements. The syllogism is as follows:

9       1. The Attorney General made conditional commitments not

10 to prosecute;

11      2. In spite of Mr. Stuart's compliance with the Attorney

12 General's conditions, the United States is prosecuting Mr.

13 Stuart;

14      3. Therefore, the Attorney General's statements

15 misled Mr. Stuart.

16      Mr. Stuart asserts that he has been entrapped by the

17 Attorney General's official, misleading statements based on

18 applicable legal authorities and compelling facts and

19 circumstance as follows:

20      1.   Mr. Stuart is not solely relying on the Ogden Memo,
            rather in forwarding his medical marijuana cultivation
21           he relied upon:(a) his review and knowledge of
            Attorney General Holder's less qualified public
22           statements; (b) Attorney General Holder's represen-
            tation to Judge Fogel; and/or (c) the extensive
23           articles and broadcasts related to the Attorney
            General's enunciated positions which universally
24           reported that the Attorney General was promising that
            federal authorities would refrain from raiding clinics
25           or indicting individuals who were acting in compliance
            with the guidelines published in the Ogden Memo;

26
       2.   Mr. Stuart will also produce evidence that the
27           Attorney General's lawyer had represented to Judge
            Fogel that the Attorney General considered the Ogden
28           Memo guidelines binding upon federal prosecutors;

1    3.   Mr. Stuart further cites the following authorities to
          rebut any suggestion by the government that the United
2         States is not bound by the Attorney General's
          commitment not to prosecute because the Attorney
3         General did not make that promise directly to Mr.
          Stuart.
4
     A public promise has long been recognized as binding. §45,
5
Restatement (Second) of Contracts.  In order to be binding, the
6
offeror must promise to do something if an offeree engages in
7
certain conduct. The contract is created when the offeree
8
performs by engaging in the conduct. Typical illustrations are
9
found in public offers of rewards or prizes. Comment to §45. *See*
10
*Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1104 (10th
11
Cir. 2001).
12
     The binding nature of public statements took root as far
13
back as an English Court in 1892. *Carlill v. Carbolic Smoke Ball*
14
*Co.*, 1 Q.B. 256 (Court of Appeal, 1892).  A company spokesman
15
publicly proclaimed that it would pay 100 pounds to any person
16
who used its product as directed and was, nevertheless, stricken
17
with the flu which had struck London in epidemic proportions.
18
*Id.* at 256-57.  Mrs. Carlill, like thousands of others,
19
purchased the eponymous smoke ball. She used it religiously
20
three times a day.  She fell ill to the flu. She demanded the
21
promised 100 pounds. The company complained its public promise
22
was not binding because it did not personally promise Mrs.
23
Carlill.  The Court disagreed. *Id.* at 261. The court reasoned:
24
          [I]f a person chooses to make extravagant
25          promises ... he probably does so because it
          pays him to make them, and, if he has made
26          them, the extravagance of the promises is no
          reason in law why he should not be bound by
27          them.  *Id.* at 268.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331
28

1        Here, like the <u>Carbolic Smoke Ball Co.</u>, the United States

2  has profited substantially from Attorney General Holder's

3  statements confirming President Obama's campaign promises.

4  Those promises have reaped tens of millions of dollars in

5  income tax revenues derived from formerly black market and

6  untaxed trafficking in medical marijuana.  This revenue has

7  augmented the political capital President Obama gained when

8  54% of the American public (approximately 65% of which

9  favored legalization of medical marijuana) voted him into

10 office.

11       American courts have consistently adopted the <u>Carbolic</u>

12 <u>Smoke Bomb, Co.</u> holding when determining the enforceability

13 of conditional public promises. The following cases are

14 representative of such holding:

15            a.   <u>Drummond v. U.S.</u>, 35 Ct.Cl. 356 (1900)(promise to
                   pay reward for apprehension and delivery of
16                 fugitive);

17            b.   <u>Barnes v. Treece</u>, 549 P.2d 1152, 1155 (Wash.Ct.
                   App. 1976)(promise to pay reward to anyone who
18                 can prove one of company's products to be
                   "crooked");
19
             c.   <u>Rosenthal v. Al Packer Ford, Inc.</u>, 36 Md.App.
20                 349, 358, 374 A.2d 377, 382 (1977) (promise to
                   pay reward if dealership's public assertion
21                 proven untrue);

22            d.   <u>Newman v. Schiff</u>, 778 F.2d 460, 466-7 (8th Cir.
                   1985)(promise to pay reward if anyone call's this
23                 show and cites a code section requiring an
                   individual to file a tax return); and
24
             e.   <u>Grove v. Charbonneau Buick-Pontiac, Inc.</u>, 240
25                 N.W.2d 853, 856 (N.D. 1976) (promise to award car
                   to anyone who shot a hole-in-one – finding any
26                 ambiguity in the terms of the offer was to be
                   construed against the offeror).
27
     4.   Mr. Stuart will call the Attorney General and other
28        witnesses to establish that the Attorney General was
          and is well aware of the historical context in which

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1    he made his commitment, including the policy of prior
     administrations, the campaign promises made by
2    President Obama, the County of Santa Cruz proceedings,
     his commitment to Judge Fogel and his success garnered
3    by making that commitment;

4    5.   Mr. Stuart has cited authorities, *supra*, explaining
          why the Estoppel by Misleading Statement Doctrine, is
5         not limited to instances in which government official
          promises a defendant his conduct is "legal;"
6
7    6.   Mr. Stuart will also provide sufficient foundation for
          this Court to order a pretrial evidentiary hearing
          pursuant to Rule 104 of the FEDERAL RULES OF EVIDENCE
8         and at that hearing Mr. Stuart will provide sufficient
          evidence to prove the assertion made in this
9         memorandum: (a) that the Attorney General
          conditionally promised the Federal government would
10        not prosecute certain individuals if they conformed
          their conduct to the Ogden Memo, and (b) Mr. Stuart
11        conformed his conduct to that described in the Ogden
          Memo; and
12
13   7.   The Attorney General's lawyer recently successfully
          argued to the Honorable Saundra Brown Armstrong,
          United States District Court Judge for the Northern
14        District of California, Oakland Division, the Ogden
          Memo was not a public statement to the "medical
15        marijuana community in general," but was issued
          "solely as a guide to the exercise of investigative
16        and prosecutorial discretion." Marin Alliance For
          Medical Marijuana (MANN) v. Holder, 2011 U.S. Dist.
17        LEXIS 136089 (N.D.Cal. 2011).

18        If the prosecution takes such position here, the

19   prosecution is precluded from then arguing that Mr. Stuart

20   cannot, as a matter of law, assert Estoppel by Official

21   Misleading because the Ogden Memo ("an internal memorandum not

22   meant for public consumption") contained an assertion that the

23   guidelines did not create a defense to a federal prosecution.

24        If the truth-finding process inherent in these proceedings

25   is not distorted either because: (1) the Attorney General is

26   successful in quashing a subpoena or (2) the prosecution

27   otherwise frustrates the defendant's efforts in presenting the

28   facts and his defense, Mr. Stuart will be able to present

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1  undisputed evidence and testimony at that pretrial hearing to

2  prove each element necessary for this Court to find that Mr.

3  Stuart, as a matter of law, was entrapped.

4       Therefore, based on the foregoing, the Court should grant

5  the motion and dismiss the indictment because Mr. Stuart, as

6  both a matter of fact and law, was entrapped by the Attorney

7  General and other federal officials' misleading statements.

8       To otherwise allow this prosecution to proceed violates due

9  process and would sanction the "indefensible sort of entrapment"

10 long condemned by the United States Supreme Court.  If the Court

11 finds that the predicate facts for this defense are in dispute

12 or have not been fully developed, the defendant must be allowed

13 to present the defense of entrapment by estoppel to the jury at

14 trial, where he can "demonstrate a reasonable belief that [his]

15 conduct was sanctioned by the government." United States v.

16 Burrows, 36 F.3d 875 (9th Cir. 1994).

17                              II.

18            THE GOVERNMENT'S INDICTMENT OF ETHAN STUART
             IS BARRED BY THE DOCTRINE OF JUDICIAL
19           ESTOPPEL.

20      Mr. Stuart is also moving for the Court to dismiss the

21 Indictment charging him with conspiracy to manufacture and

22 distribute marijuana as well as any and all Title 21 forfeiture

23 allegations because the government's indictment is barred by the

24 Doctrine of Judicial Estoppel.

25      Judicial Estoppel bars the present prosecution based on the

26 fact that the government, through its duly authorized agent,

27 Attorney General Eric H. Holder, Jr., has taken a position with

28 this Court that is diametrically opposed to the position

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1  Attorney General Holder took in successfully convincing Judge

2  Fogel to dismiss a lawsuit.

3       This Doctrine precludes a litigant from asserting a

4  position that is inconsistent with a position that the litigant

5  or its privy unequivocally asserted in prior testimony or

6  affidavit, a pleading, legal argument, brief, stipulation, or

7  settlement which has received judicial acceptance. New Hampshire

8  v. Maine, 532 U.S. 742, 750-51 (2001).

9       The litigant who seeks to invoke the doctrine need not have

10  been a litigant to the prior proceeding. "The gravamen of

11  judicial estoppel is the intentional assertion of an incon-

12  sistent position that perverts the judicial machinery." Jackson

13  v. County of Los Angeles, 60 Cal.App.4th 171, 183, 70

14  Cal.Rptr.2d 96, 103 (Cal.App.2.Dist. 1997).  If two positions

15  are inconsistent, the litigant will not be permitted to

16  "whipsaw" one court by asserting a position which is contrary to

17  that taken with another. In the Matter of Cassidy, 892 F.2d 637,

18  641-42 (7th Cir. 1990).  The outcome of the prior proceeding,

19  privity of parties and reliance are not critical to a court's

20  determination that a party is judicially estopped.  *Id.*

21       The Judicial Estoppel Doctrine combats intentional self-

22  contradiction, inconsistent judicial results, and the perception

23  that the judiciary is controlled by powerful and frequent users

24  of the judicial system.  Allen v. Zurich Ins. Co., 667 F.2d

25  1162, 1166 (4th Cir. 1982).  "Acting on the assumption that

26  there is only one truth about a given set of circumstances, the

27  courts apply Judicial Estoppel to prevent a party from

28  benefitting itself by maintaining mutually inconsistent

positions regarding a particular situation." King v. Herbert J. Thomas Mem. Hosp., 159 F.3d 192, 196 (4th Cir. 1998).  The practice of selling inconsistent positions to courts damages the integrity of the nation's judicial system, leads to needless litigation and embarrassing inconsistencies in decisions and weakens the public's confidence in the judicial system. Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208 (1st Cir. 1987).

Further, when a party receives a favorable settlement as a result of the initial assertion, rather than proceeding to a judgment, that favorable settlement is equivalent to receiving a favorable judgment.  Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 605 (9th Cir. 1996).

The Doctrine of Judicial Estoppel is an equitable doctrine premised on the goal of protecting judicial integrity and invoked at the discretion of a Court. Morris v. California, 966 F.2d 448, 452-53 (9th Cir. 1991), (cert. denied, 506 U.S. 831 (1992)).  Due to its equitable basis, the Doctrine cannot be reduced to a precise formula or test.  However, several factors typically inform a Court whether to apply the doctrine:

1.  The party's later position must be clearly inconsistent with its earlier position;

2.  The party was successful in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;

3.  Whether the party seeking to assert an inconsistent position [the Prosecution] would derive an unfair advantage or impose an unfair detriment on the opposing party [Mr. Stuart] if not estopped.

New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001).

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1    The foregoing factors do not establish inflexible
2    prerequisites or an exhaustive formula for determining the
3    presence of Judicial Estoppel, but the existence of all of
4    the foregoing factors firmly tips the balance of equities in
5    favor of finding that a party should be judicially estopped.
6    *See*, e.g., <u>U.S. v. Liquidators of European Federal Credit Bank</u>,
7    630 F.3d 1139 (9th Cir. 2011).

8        In <u>Marin Alliance For Medical Marijuana v. Holder</u>, 2012
9    U.S. Dist. LEXIS 96283, (N.D.Cal. 2011), Judge Armstrong denied
10   the plaintiff's assertion that the Attorney General was
11   judicially estopped from asserting the plaintiff was subject to
12   possible prosecution for violation of the CSA because that
13   position was inconsistent with the Attorney General's position
14   in <u>County of Santa Cruz</u>. While Judge Armstrong's ruling is not
15   binding upon this court, it merits discussion if only because
16   the facts of that case are readily distinguishable.

17       On November 11, 2011, the Marin Alliance for Medical
18   Marijuana (MAMM) filed suit against Attorney General Holder and
19   others asking for an injunction from taking the action
20   threatened in the "<u>Haag</u> Letter." Judge Armstrong's finding that
21   the plaintiffs had failed to establish sufficient grounds for
22   imposing the doctrine was premised on the following:

23       1.   The <u>County of Santa Cruz</u> stipulation did not preclude
             the Attorney General from giving notice of and then
24           changing his position with respect to enforcement of
             the CSA, it only provided that if he did, the
25           plaintiffs could re-initiate the suit — here the
             Attorney General provided no such notice of a change
26           in policy when Mr. Stuart was engaged in his medical
             marijuana cultivation;
27
28       2.   By the time the plaintiff has initiated the suit, the
             "Cole Memo" had been issued and the <u>Haag</u> letters had
             been sent, giving the Marin plaintiffs notice of

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

30

1                     Attorney General Holder's change in position – here
Mr. Stuart's alleged conduct began before the <u>Cole</u>
2                     Memo was released, and the Office of the California
United States Attorney sent him no letter warning him
3                     of a change in enforcement policy; and

4     3.    Merely deciding to send the <u>Hagg</u> letters to the Marin
plaintiffs' landlords warning of potential future
5            actions did not create an unfair advantage for the
Attorney General Holder over the plaintiffs – here, of
6            course, the United States indicted Mr. Stuart with a
federal felony indictment.  That action unfairly
7            advantaged the United States and prejudiced Mr.
Stuart, who faces a lengthy prison sentence;
8

9     4.    Even assuming the adjustment in the DOJ's position
with respect to prosecuting "large scale" enterprises
could be fairly interpreted as being in effect during
10            the period of the alleged conspiracy, Mr. Stuart's
cultivation was not "large scale." The DOJ has, to
11            this day, refrained from criminally prosecuting the
"large scale" ventures it targeted in California in
12            spite of the fact that they dwarfed Mr. Stuart's
activities.  For instance, Harborside Health Clinic
13            had more than 100,000 patients and annual revenue of
approximately $22 million.  Ethan Stuart was
14            cultivating for his own personal medical needs.

15

16     Mr. Stuart is therefore not precluded from invoking the

Judicial Estoppel Doctrine as a grounds for dismissal of the
17
Indictment against him.
18
    Through evidence and the testimony of Attorney General
19
Holder, Mr. Stuart will prove that:
20
    1.    He had President Obama's authority to authorize the
21            implementation of the Guidelines for Prosecution set
forth in the <u>Ogden</u> Memo;
22
    2.    He authorized or ratified the <u>Ogden</u> Memo;
23
    3.    He authorized or ratified the release of the <u>Ogden</u>
24            Memo to the public;

25     4.    He authorized or ratified the representations AUSA
Quinlivan made to Judge Fogel and to the Santa Cruz
26            plaintiff's counsel in order to obtain a dismissal of
the lawsuit, endorsed by Judge Fogel;
27
    5.    He authorized AUSA Quinlivan to enter into and sign
28            the Stipulation on his behalf, which then led to Judge
Fogel's ORDER of dismissal;

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

31

1         6.   He knew that by authorizing AUSA Quinlivan to make the
                  foregoing representations and enter into the
2                     stipulation he would and did gain a favorable result
                  in the Santa Cruz lawsuit by Judge Fogel dismissing
3                     the complaint; and

4         7.   His representations made to Judge Fogel and to the
                  American public are the "one truth" about the DOJ's
5                     commitment to refrain from prosecuting those in
                  compliance with state medical marijuana laws.

6

7       The United States Attorney's Office has charged Ethan

8   Stuart, a law-abiding, lifetime citizen of the United States

9   with conspiring to manufacture marijuana.  Attorney General

10  Holder has made multiple public statements that the United

11  States Attorney's Office would not accuse an individual of

12  conspiring to be a felony drug dealer, unless the individual

13  violated both federal and state law. Attorney General Holder

14  assured United States District Court Judge Fogel that the seven

15  conditions listed in the Ogden Memo would be binding upon the

16  United States Attorney's before initiating a federal prosecution

17  for violation of the CSA.

18      Mr. Stuart agreed to comply with and did comply with state

19  law.  None of the seven factors listed in the Ogden Memo were a

20  part of Mr. Stuart's activities relating to medical cannabis

21  cultivation.

22      For the foregoing reasons, Defense Counsel respectfully

23  moves for the Court to dismiss the Indictment against Ethan

24  Stuart because the government's Indictment is barred by the

25  Doctrine of Judicial Estoppel.

26

27

28

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

III.

THE GOVERNMENT'S INDICTMENT OF ETHAN STUART
IS BARRED BY THE DOCTRINE OF PROMISSORY
ESTOPPEL.

Pursuant to Fed. R. Crim. P. 12(b)(3)(A), Defendant Ethan Stuart respectfully moves the Court to dismiss the Indictment charging him with conspiracy to manufacture marijuana as well as any and all Title 21 forfeiture allegations because the government's indictment is barred by the Doctrine of Promissory Estoppel.

Mr. Stuart bases this motion on the following:

1.  United States Attorney General Eric H. Holder, Jr.
    made repeated public promises that the United States
    will honor President Barrack Obama's campaign promise
    not to prosecute an individual for violation of the
    CSA so long as the individual complied with certain
    conditions;

2.  Mr. Stuart reasonably relied on the Attorney General's
    promises;

3.  Mr. Stuart complied with the conditions set by the
    Attorney General;

4.  Beyond the political capital gained by the Attorney
    General's immediate superior, President Obama, the
    United States has profited from the Attorney General
    Holder's promise by receiving millions of dollars in
    tax revenues; and

5.  As a result of Mr. Stuart's reasonable reliance on the
    Attorney General's promise, Mr. Stuart has been
    charged with a federal felony, incurred a substantial
    monetary loss and faces a considerable prison
    sentence.

### CONCLUSION

Based upon the foregoing authorities and analysis, Defense Counsel respectfully moves for the Court to grant Mr. Stuart's motion to dismiss after the Court has had an opportunity to hear testimony and receive evidence to support the facts set forth

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1  herein. In the alternative, if the Indictment is not dismissed

2  as a matter of law, Defendant must be allowed to present this

3  defense to the jury at a trial of his case.

4      Dated:  September 26, 2012

5

6                                   /s/ J. TONY SERRA
                               SHARI L. WHITE

7                                 J. TONY SERRA
                               Attorneys for Defendant

8                                 ETHAN STUART

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331